IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TIMOTHY WAYNE TARVER, ) | |
| ) | |
| APPELLANT, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 24-0119-JB-B |
| ) | |
| SUSAN DAVIS, ) | |
| ) | |
| APPELLEE. ) | |

**ORDER**

This action is before the Court on appeal from the decision of United States Bankruptcy Judge Jerry C. Oldshue entered April 2, 2024, Appellant, Timothy Wayne Tarver's ("Tarver") Brief (Doc. 5)[1], Appellee, Susan Davis' ("Davis") Brief (Doc. 6), and Tarver's Reply Brief (Doc. 11). After consideration of the record and the relevant filings, the Bankruptcy Court's decision is **AFFIRMED**.

**I.    Background**[2]

The Debtor, Timothy Wayne Tarver ("Tarver") filed Chapter 13 bankruptcy on September 21, 2020. (Doc. 3). His Petition listed four creditors: one secured by a mortgage, two secured by vehicles, and his ex-wife, Susan Davis ("Davis"), formerly known as Susan Tarver. Tarver is an above median income debtor. (*Id*.) Tarver's regular monthly income from several sources includes: $12,796.25 in gross wages from employment, $1,300.00 in rental income, $3,389.00 in VA disability, and $1,700.00 in other retirement. (*Id*.)

---

[1] Tarver filed a "Corrected" brief on August 22, 2024 (Doc. 11). Although the Court has considered the corrected brief, it will refer to Tarver's brief as Doc. 5, so as not to disrupt the sequential order of the filings.

[2] The factual background recites the Procedural Background and Findings of Fact from the Bankruptcy Court's Memorandum Opinions of February 13, 2023 (Doc. 3 at PageID.292-308) and April 2, 2024 (Doc. 3 at PageID.399-440), with only non-substantive alterations and without internal citations.

Tarver was married to Davis for more than ten years. (*Id*.). The two were divorced on June 11, 2012, by Final Decree of Divorce ("Divorce Decree") entered by the Circuit Court of Elmore County, Alabama ("Domestic Court"). (*Id*.) The Divorce Decree incorporated a Marital Settlement Agreement ("Agreement") executed by both Tarver and Davis on May 11, 2012. (*Id*.) The Agreement reflects that Tarver and Davis each had independent counsel and affixed their signatures voluntarily in the presence of a notary public. (*Id*.). The Agreement provides in part for Davis to receive " . . . 50% of [Tarver's] Air Force retirement and 50% of the disability monies. . ." (*Id*.). When Tarver failed to assign the VA benefits, the Domestic Court ordered Tarver to pay half of "any amounts [he] received in lieu of disposable retired pay . . ." ("Court Ordered Payments"). (*Id*.).

Tarver's subsequent refusal to remit the Court Ordered Payments to Davis prompted an avalanche of litigation, beginning with the first contempt proceeding filed by Davis in the Domestic Court. (*Id*.). Although Tarver argued that the state court lacked jurisdiction to divide his VA disability benefits under federal law, the Domestic Court remained resolute in its holding that Davis was entitled to the Court Ordered Payments and entered a contempt order for his failure to comply. (*Id*.). Upon Tarver's appeal, the Alabama Court of Civil Appeals affirmed the Domestic Court's Order and the Supreme Court of Alabama denied certiorari.[3]

Tarver's continued refusal to pay Davis the Court Ordered Payments led her to file a second petition for contempt. (*Id*.) In addition to making the same argument that he could not be required to remit his VA disability; Tarver also removed the contempt proceeding to federal court. (*Id*.). After the federal court remanded for lack of jurisdiction, Tarver instituted another federal

---

[3] *See Tarver v. Tarver*, 194 So. 3d 1000 (Ala Ct. App. 2014) and *Ex parte Tarver*, 210 S. 3d 1101 (Ala. 2015).

action against Davis which was also dismissed for the same reason. (*Id*.). The Domestic Court then held Tarver in contempt, entered a $27,853.00 judgment against him, and ordered him to make all future payments to Davis. (*Id*.). Tarver appealed the contempt judgment to the Alabama Court of Civil Appeals. While that appeal was pending, Tarver's bank account was garnished by the Circuit Court of Geneva County at Davis' request. (*Id*.). Upon Tarver's motion to stay the garnishment, the Domestic Court entered an order allowing release of the garnished funds to Tarver once he posted a supersedeas bond. (*Id*.). After the Alabama Court of Civil Appeal's affirmance of the Domestic Court and the Supreme Court of Alabama's denial of certiorari, the Domestic Court ordered that Davis was entitled to receive the supersedeas bond funds. (*Id*.).

Davis later filed a third contempt action alleging that Tarver refused to abide by the Domestic Court's Orders and that by methods of trickery and deceit Tarver had taken the supersedeas bond funds from the courthouse. (*Id*.). The day before the initial setting on the third contempt petition, Tarver filed suit against the Domestic Court Judge, the Honorable Sibley Reynolds. The Eleventh Circuit Opinion dismissing Tarver's claims against Judge Reynolds stated in part that ". . . to the extent, [Tarver] seeks to relitigate the state court orders requiring him to pay half of his VA disability benefits to [Davis] he cannot do so in federal court. He has already appealed those orders in state court — twice. He cannot try again here." *Tarver v. Reynolds*, 2019 WL 3889721, at 9 (M.D. Ala. Aug. 16, 2019), aff'd, 808 F. App'x 752 (11th Cir. 2020).

After 8½ years of litigation, Tarver's attempts to renege on the Agreement and avoid the orders of the Domestic Court had proven futile. Yet on September 1, 2020, Tarver initiated a new action by filing a complaint in the U.S. District Court for the Middle District of Alabama seeking a declaratory judgment and injunctive relief ("Declaratory Judgment Action") to prevent Davis from

3

making any claim to his disability benefits under the Divorce Decree. (*Id.*). Despite the filing of the Declaratory Judgment Action, Tarver's continued failure to comply with the orders of the Domestic Court led to the issuance of a "Third Contempt Order" which states in part,

> Mr. Tarver having received all the bond funds from the Clerk when requested to return the funds and he did not return the money sent to him in error.
> Mr. Tarver last paid funds to Mrs. Tarver in September 2018.
>
> > ORDERED
> > 1. That Mr. Tarver has the ability to pay his agreed settlement, monthly and has failed.
> > 2. That he is found to be in contempt and placed into custody, pending payment of the purger amount of $92,569.66.
> > 3. Attorneys fees of $7500.00 taxed to Mr. Tarver for the attorney bringing this Contempt Action.

(*Id.*).

The Third Contempt Order was the impetus for Tarver's filing of his Chapter 13 bankruptcy in which he listed Davis' claim as his only unsecured debt. (*Id.*). Davis' proof of claim is based on the Third Contempt Order attached thereto. (*Id.*). The administration of the bankruptcy was delayed for a ruling on Tarver's then pending Declaratory Judgment Action. After the District Court's dismissal of Tarver's Declaratory Judgment action,[4] the Bankruptcy Court held a hearing on April 28, 2022, at which Tarver advised that the matter was on appeal to the Eleventh Circuit. (*Id.*). Tarver further represented to the Bankruptcy Court at that hearing that if his appeal was unsuccessful, he would not be seeking return of the funds paid into the court for payment of Davis' Claim. Ultimately, the Eleventh Circuit affirmed the District Court's decision and dismissed the Declaratory Judgment Action. (*Id.*).[5]

---

[4] *See Tarver v. Tarver,* 2021 WL 4443699 (M.D. Ala. Sept. 28, 2021).
[5] *See Tarver v. Tarver*, 2022 WL 4372439 (11th Cir. 2022).

Following the dismissal of Tarver's Declaratory Judgement Action, the Bankruptcy Court considered Tarver's objection to Davis' proof of claim (based on the third contempt Order) wherein Tarver argued that the Domestic Court Orders are void and the award was a property settlement. The Bankruptcy Court held that the *Rooker-Feldman* Doctrine ("*Rooker-Feldman*") prevents re-litigating, altering, or otherwise amending the orders of the Domestic Court. (*Id*.). The February 13, 2023 Memorandum Order and Opinion explained that: (1) *Rooker-Feldman* prevents lower federal courts from re-adjudicating matters that were previously litigated by the same parties in state court as such review may be had only by the state appellate courts and the United States Supreme Court; (2) the crux of the pending disputes between the parties had already been extensively litigated in both state and federal courts; (3) the United States District Court and the Eleventh Circuit had already held that Tarver's argument (that the state court's ruling violates federal law) falls within the narrow purview of *Rooker-Feldman* and prohibits his collateral attack of the Divorce Decree; and (4) *Rooker-Feldman* applies in bankruptcy proceedings. (*Id*.) (citing *Tarver v. Tarver*, 2022 WL 4372439 (11th Cir. 2022); *Tarver v. Reynolds*, 2019 WL 3889721 (M.D. Ala. Aug. 16, 2019), aff'd, 808 F. App'x 752 (11th Cir. 2020)); *see also, In re Wilson*, 116 F.3d 87, 90 (3d Cir. 1997)("[T]he Bankruptcy Code was not intended to give litigants a second chance to challenge a state court judgment nor did it intend for the Bankruptcy Court to serve as an appellate court [for state court proceedings]"); *In re Cass*, 2019 WL 7667445 (Bankr. S.D. Ala. 2019)(noting that only the U.S. Supreme Court has appellate jurisdiction over judgments of state courts in civil cases); *In re Al-Sedah*, 347 B.R. 901, 904 (Bankr. N.D. Ala. 2005)("The *Rooker-Feldman* Doctrine is applicable in bankruptcy proceedings.").

As *Rooker-Feldman* precluded Tarver's attempt to attack the validity of the underlying

Domestic Court Order, the Bankruptcy Court found that Davis' claim constituted prima facie evidence of the validity and amount of the debt because it was timely filed, properly executed, and substantiated by the Domestic Court Order. However, Davis' Claim was not afforded priority treatment because the Domestic Court Order did not indicate whether the award was "in the nature of alimony, maintenance, or support." (Doc. 3.) Accordingly, Tarver's Objection was sustained in part, allowing Davis' claim to be treated as a general unsecured. (*Id*.). However, considering the extensive pre-petition litigation between the parties and the state court expertise and familiarity with the Domestic Court proceedings, the Bankruptcy Court determined that if Davis sought to pursue priority treatment, clarification of the Third Contempt Order would be more appropriate and more efficiently handled in the Domestic Court. (*Id*.).

On February 27, 2023, Tarver sought reconsideration of the Bankruptcy Court's allowance of Davis' claim as a general unsecured claim, again contending that the underlying award from the Domestic Court was unenforceable. (*Id*.). The Bankruptcy Court denied Tarver's request noting that sufficient cause did not exist to amend its ruling because the same arguments were previously raised and *Rooker-Feldman* prohibits re-litigation of the state court judgment. (*Id*.). Thereafter, Tarver's Chapter 13 plan was confirmed which required payments of $2,248.00 per month with a 100% dividend to unsecured creditors. (*Id*.). Davis then filed a Motion to Reclassify her claim under §507(a)(1)(A) based on an Order she obtained from the Circuit Court of Elmore County on or about November 15, 2023. (*Id*.). Said Order states that the amount awarded to Davis under the Settlement Agreement, "shall be considered as a domestic support obligation in the nature of post-marital support." (*Id*.).

6

Tarver objected to priority treatment of Davis' claim again arguing that an award of veteran's disability is exempt. (*Id*.). On April 2, 2024, the Bankruptcy Court issued a Memorandum and Order which stated, in relevant part:

> This Court already held that *Rooker-Feldman precludes* re-litigation of Tarver's contest to the validity of the Domestic Court Order underpinning Davis's Claim. (Doc. 138). Tarver's Response to Davis's Motion as well as his numerous prior contests of the state court orders rely on the same essential claim, that the state court violated controlling federal law and acted without jurisdiction by enforcing the negotiated division of his VA disability benefits at divorce. This Court understands that is Tarver's argument. However, there is no exception to *Rooker-Feldman* for situations where a state court misapplies controlling federal law. *See Wood v. Orange Cnty.*, 715 F.2d 1543, 1547 (11th Cir. 1983)("the federal district court's jurisdiction does not trench on the exclusive authority of the Supreme Court to review state court decisions for errors of federal law.")
>
> It is not appropriate for Tarver to attempt to again raise the same arguments that he has already lost multiple times in this and other courts. This Court has already determined that *Rooker-Feldman* precludes re-litigation of the pre-petition Domestic Court Award here. The February 13, 2023 Memorandum Order did not invite Tarver to again contest the validity of the state court orders; it simply allowed Davis to seek clarification of whether the monetary award in the Third Contempt Order was, ". . . in the nature of alimony, maintenance, or support." (Doc. 138). As Davis has now obtained an order from the Domestic Court indicating the obligation "shall be considered as a domestic support obligation in the nature of post-marital support" this Court finds consistent therewith that such claim is entitled to priority treatment pursuant to 11 U.S.C. 507(a)(1)(A).
>
> To the extent that Tarver argues that he should not be required to pay the domestic award from his VA disability, the record reflects that he has gross income of $12,796.25, receives VA disability of $3389.00, has net income of $7224.40, and his current Chapter 13 plan payment is $2248.00. Thus, Tarver's Chapter 13 plan payment may be made from the source of his choosing. He has more than sufficient income to pay his Chapter 13 plan payment even if his VA disability was carved out as exempt; therefore, that is a non-issue.

(*Id*.). This appeal followed.

## II. Appellate jurisdiction, venue, and standard of review

This Court has appellate jurisdiction to hear final orders of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1) ("The district courts of the United States shall have jurisdiction to hear appeals [ ] from final judgments, orders, and decrees[.]"). Venue is proper because the appeal "shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving." *Id*.

A bankruptcy court's findings of fact are reviewed for clear error. *In re Colortex Industries, Inc.*, 19 F.3d 1371, 1374 (11th Cir. 1994) ("The district court makes no independent factual findings; accordingly, we review solely the bankruptcy court's factual determinations under the "clearly erroneous" standard."); *In re Daughtrey*, 896 F.3d 1255, 1273 (11th Cir. 2018)("A factual finding is not clearly erroneous unless, after reviewing all of the evidence, we are left with 'a definite and firm conviction that a mistake has been committed.'")(citations omitted). A bankruptcy court's legal conclusions and any mixed questions of law and fact are reviewed *de novo*. *In re Am.-CV Station Grp., Inc.*, 56 F.4th 1302, 1309 (11th Cir. 2023). "The district court must independently examine the law and draw its own conclusions after applying the law to the facts, and then may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." *McKinney v. Russell*, 567 B.R. 384, 386 (M.D. Ala. 2017) (citation omitted).

## III. Analysis

On appeal, Tarver raises four grounds on which the Bankruptcy Court erred. The Court will consider each argument in turn.

### A.  Whether the Bankruptcy Court erred in overriding 11 U.S.C. § 502(b).

Tarver's first assignment of error is that the Bankruptcy Court failed to make an independent determination of Davis' claim under 11 U.S.G. § 502(b)(1) pursuant to the provisions of 38 U.S.C. §5301(a)(1). (Doc. 5). According to Tarver, "[w]hen the state court *confirmed* that VA disability was to be paid to Davis, this matter became an entirely federal issue [...]". (Doc. 5).  In short, Tarver argues the Bankruptcy Court should have considered the legality of the underlying domestic payments pursuant to 38 U.S.C. § 5308 and disallowed Davis' claim. *(Id*.).  Instead, Tarver posits that the Bankruptcy Court misapplied the *Rooker-Feldman* doctrine. (Doc. 9).  In contrast, Davis contends that the Bankruptcy Court properly applied the *Rooker-Feldman* Doctrine, before considering the merits of Davis' claim, and properly permitted clarification from the Domestic Court in order to establish whether Davis' claim should be given priority status. (Doc. 6).

Under 11 U.S.C. § 502(b)(1) a claim asserted in a proof of claim is allowed except to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law [...]".  As quoted above, the Bankruptcy Court determined that Tarver's objection to the reclassification of Davis' claim was yet another attempt by Tarver contest to the validity of the Domestic Court Order underpinning Davis' Claim.  Because the Bankruptcy Court had already determined that Tarver's arguments were barred by the *Rooker-Feldman* Doctrine, it declined to entertain Tarver's argument again for the purpose of reaching an alternative conclusion.  In so doing, it noted "there is no exception to *Rooker-Feldman* for situations where a state court misapplies controlling federal law." (Doc. 3) (citing *Wood v. Orange Cnty.*, 715 F.2d 1543, 1547 (11th Cir. 1983)("the federal district court's jurisdiction does not trench

on the exclusive authority of the Supreme Court to review state court decisions for errors of federal law.")).

The Bankruptcy Court's actions were not erroneous. First, the record reflects that Davis' claim was based on the third contempt order, which constituted prima facia evidence of the validity and amount of the debt and the claim was timely filed, properly executed, and substantiated. As a result, the Bankruptcy Court issued a lawful order allowing Davis' claim and properly exercised its authority to grant leave for clarification from the Domestic Court. Importantly, the Bankruptcy's Court permitting Davis to seek clarification or Davis' submission of the Domestic Court's clarification order to the Bankruptcy Court did not open the door for Tarver to again contest the enforceability of the underlying Domestic Court Order. Rather, Tarver had already made his unenforceability arguments, the Court had previously determined those arguments were foreclosed by the *Rooker-Feldman* Doctrine, and the clarification order did not erase the slate on the Bankruptcy proceeding. Further, even if the clarification order somehow opened the door to consider Tarver's arguments anew, the same would still be barred by the *Rooker-Feldman* Doctrine. In sum, *Rooker-Feldman* prevents the Bankruptcy Court from considering Tarver's arguments that the Domestic Court Order is invalid and unenforceable. Based on the relevant facts here, *Rooker-Feldman* applies.[6] As a result, the Bankruptcy Court's determination that Davis' claim be paid, was not legal error. Second, even if the determination

---

[6] To be clear, Tarver's appeal focuses on whether the Bankruptcy Court impermissibly allowed Davis' claim *after* the clarification order was filed because the order, in contrast to the Third Contempt Order, specifically detailed that Davis was to received Tarver's VA disability funds. Nevertheless, this Court has considered the facts in total and finds that the initial determination that *Rooker-Feldman* applied (at the time Tarver objected to Davis' claim) and the subsequent determination that *Rooker-Feldman* applied (after the clarification order was submitted and Tarver again opposed priority status) is correct. Although Tarver continues to frame his position otherwise, it is clear that the only reason he filed bankruptcy was to potentially circumvent the enforceability of the Domestic Court Order which has already been upheld upon review.

10

was in error, which it was not, such an error would not be clear given the lengthy record leading up to the Order now being appealed. Specifically, the Bankruptcy Court's determination that *Rooker-Feldman* applied is supported by the fact that the same conclusion was previously reached in other District Courts and affirmed by the Eleventh Circuit. As a result, even if an error was made, the significant history of litigation addressing the very issue ultimately considered by the Bankruptcy Court supports the determination made.

### B. Whether the Bankruptcy Court exceeded its equitable powers under 11 U.S.C. § 105(a).

According to Tarver, the Bankruptcy Court "exceeded the limits of its equitable powers under 11 U.S.C. § 105(a) and committed clear legal error when it *sua sponte* ruled that Davis' claim is to be equitably paid". (Doc. 5). Tarver's position relies on his position that the underlying Domestic Court Order was unenforceable under 38 U.S.C. §5301(a)(1) and, therefore, the Bankruptcy Court lacked the power to permit Davis' claim. In response, Davis again argues the Bankruptcy Court correctly applied *Rooker-Feldman* and properly granted leave to seek clarification relating to the priority status of Davis' claim. (Doc. 6).

Federal statute 11 U.S.C. § 105(a) gives the Bankruptcy Court the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. [. . . including the power to] sua sponte, tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."  11 U.S.C. § 105(a).

Tarver's second assignment of error fails for the same reasons as hist first. More specifically, Tarver's position relies on his belief that the Bankruptcy Court should have considered the enforceability of Davis' claim based on the clarification order. But, again, there is no support

11

for Tarver's position that the clarification order opened the door for Tarver to reassert his previous objections to Davis' claim. Second, the Bankruptcy Court's application of the *Rooker-Feldman* Doctrine was not in error, for the reasons discussed above. As a result, Tarver's second ground for appeal lacks merit.

### C. Whether the Bankruptcy Court erred by ruling against Appellant's judicial estoppel arguments.

Tarver's third ground of appeal is that the Bankruptcy Court erred in not finding that Davis was judicially estopped from asserting that the Domestic Court obligation was a domestic support obligation ("DSO") in order to receive priority treatment. (Doc. 5). To that end, Tarver contends that the divorce decree clearly treated the payment of benefits as a property settlement, a position that Davis agreed with up until the moment she sought priority status for her claim. As such, Tarver argues that the Bankruptcy Court erred in permitting Davis to take the position that the payment of benefits was a DSO. Conversely, Davis contends that the Bankruptcy Court's deferral of the classification issue to the Domestic Court was not clear error. (Doc. 6)

"State courts have concurrent jurisdiction with the bankruptcy courts to determine whether an obligation is in the nature of support for the purposes of § 523(a)(5)." *Cummings v. Cummings*, 244 F.3d 1263, 1267 (11th Cir. 2001) (citations omitted). "We previously have noted that '[i]t is appropriate for bankruptcy courts to avoid incursions into family law matters out of consideration of court economy, judicial restraint, and deference to our state court brethren and their established expertise in such matters.'" *Id*. (11th Cir. 1992)(quoting *Carver v. Carver*, 954 F.2d 1573, 1579). As a result, a Bankruptcy Court may chose to await clarification from a Domestic Court as to the nature of the support. *See Id*.

Here, Tarver contends that the Bankruptcy Court "had all the facts and documentary evidence [. . .] "to conclude that the VA disability was not a DSO." (Doc. 5). He also acknowledges that the Bankruptcy Court had the discretion to consider judicial estoppel on its own. (*Id*.). Tarver's position is misplaced because while he may disagree with the Bankruptcy Court's decision to defer, he makes no compelling argument that the court's action was legal error. Here, the record reflects a disagreement between Tarver and Davis as to the nature of the payment obligation and a lack of indication as to the nature of the obligation per the third contempt order. Given that the totality of the record created a question as to the nature of the obligation, it was not improper for the Bankruptcy Court to conclude that Davis was not judicially estopped from asserting the obligation was in the nature of a domestic support obligation. Moreover, no error occurred when the Bankruptcy Court decided to await clarification from the Domestic Court as to the nature of the claim. As a result, Tarver's third ground for appeal is not persuasive.

    **D. Whether the Bankruptcy Court erred in applying *Rooker-Feldman* doctrine and collateral estoppel.**

Tarver's final argument is that the Bankruptcy Court erred in applying the *Rooker-Feldman* doctrine. (Doc. 5). More specifically, Tarver argues that it is the role of the Bankruptcy Court to "determine the allowance and enforceability of Davis' claim" and therefore, it should have determined the claim was for VA disability which is exempt. (Doc. 5 at 65). Tarver argues he "did not call upon the Bankruptcy Court to review or vacate any state court order. His objection was that Davis' claim is disallowed in the Bankruptcy Court under 11 U.S.C. § 502(b)(1) because, at its core, her claim is specifically for VA disability which is exempt from 'claim of creditors' and her claim is unenforceable under 38 U.S.C. § 5301(a)(1)." (Doc. 5). Despite Tarver's classification otherwise, the state court determined that the Domestic Court order was enforceable and

13

Tarver's objection to Davis' claim sought a determination by the Bankruptcy Court that the claim should be disallowed because the Domestic Court order was not enforceable. The Bankruptcy Court did not err in finding *Rooker-Feldman* applied.[7] As a result, regardless of how often Tarver describes his actions as not seeking review or vacation of the Domestic Court Order, a second (or sixth) round of review is exactly what he sought. Accordingly, the Bankruptcy Court correctly determined *Rooker-Feldman* barred his effort to relitigate the enforceability of the underlying Domestic Court Order.

Tarver similarly argues that collateral estoppel does not apply because "the issue before the state court was not 'identical' to the issue before the Bankruptcy Court because the state court did not adjudicate whether Davis' claims was allowable or unenforceable under 38 U.S.C. § 5301(a)." (Doc. 9). As with Tarver's previous arguments, he asserts that the clarification order was a significant change which triggered the Bankruptcy Court's authority to consider the enforceability of the underlying Domestic Court Order. This Court disagrees. Again, the clarification order did not reopen Pandora's box. The Bankruptcy Court properly considered Davis' claim, did not err in its determinations, and the clarification order was limited to one issue. Although Tarver has spent over a decade attempting to have the Domestic Court Order deemed unenforceable by multiple courts, the state court adjudicated the enforceability and the

---

[7] The Court understands Tarver's position that the Eleventh Circuit in *Behr v. Campbell, 8 F.4th 1206, 1212 (11th Cir. 2021)*, rejected the use of the "inextricably intertwined" standard and his argument that the allowance or disallowance of claims was never decided in state court. However, contrary to Tarver's position, the *Rooker-Feldman* Doctrine prohibited Tarver's collateral attack of the divorce decree, and the *post-Behr* analysis does not change the outcome for Tarver on the instant facts. *See Tarver v. Tarver*, 2022 WL 4372439 (11th Cir. 2022) and *Tarver v. Reynolds*, 2019 WL 3889721 (M.D. Ala. Aug. 16, 2019), aff'd, 808 F. App'x 752 (11th Cir. 2020).

Bankruptcy Court's determination that Tarver was estopped from raising the same argument in Bankruptcy Court was not in error.

### IV.     Conclusion

After consideration of the record and the relevant filings, the Bankruptcy Court's decision is **AFFIRMED**.

**DONE and ORDERED** this 21st day of March 2025.

/s/ JEFFREY U. BEAVERSTOCK
CHIEF UNITED STATES DISTRICT JUDGE
